Opinion issued March 20, 2003


















In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00204-CR




JAMES STACEY TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee 




On Appeal from the 9th District Court
Waller County, Texas
Trial Court Cause No. 00-07-10,360




O P I N I O N

          A jury found appellant, James Stacey Turner, guilty of failure to register or
verify registration as a sex offender as required in Code of Criminal Procedure article
62.06. See Tex. Code Crim. Proc. Ann. arts. 62.06, 62.10 (Vernon Supp. 2003). 
After finding two enhancement paragraphs to be true, the jury assessed punishment
at 15 years’ confinement and a $10,000 fine. In two points of error, appellant
contends the trial court erred by (1) instructing the jury that felony sodomy is a
“sexually violent offense” and (2) denying appellant’s motion for directed verdict. 
We affirm.
BACKGROUND
A.      Statutory Framework
          The Texas Legislature enacted the sex-offender registration and notification
statute in 1991.


 In 1997, the Legislature re-designated the statute, formerly included
in the Texas Revised Civil Statutes, as Chapter 62 of the Texas Code of Criminal
Procedure.


 
          Before the legislature amended the statute in 1997, the class of sex offenders
required to register did not include offenders who had been convicted prior to 1991. 
However, in 1997, the Legislature expanded the class to include those sex offenders
who had a “reportable conviction or adjudication” since September 1, 1970, and who
continued to be under some form of state supervision.


 
          As part of the 1997 amendments, the Legislature also added article 62.06,
requiring a sex offender who had been convicted of two or more “sexually violent
offenses” to report to the local law enforcement agency at least once every 90 days
to verify his or her registration information.


 In addition, article 62.12 was amended,
requiring a person who had committed at least one “sexually violent offense” to
register for his or her lifetime.


 Relating to these amendments, the Legislature added
subarticle 62.01(6), which defined “sexually violent offense.”







 
B.      Facts and Procedural History
          In 1972, appellant was convicted of sodomy.


 In 1988, he was convicted of
aggravated sexual abuse.


 
          While residing in Houston, appellant first registered as a sex offender with the
Houston Police Department on November 24, 1997. Appellant was on parole for his
1988 aggravated sexual abuse conviction at that time. To register, appellant signed
a form entitled “Department of Public Safety Sex Offender Registration,” otherwise
know as an “INT-10” form. Thereafter, appellant reported to the Houston Police
Department on March 6, 1998 and June 5, 1998, i.e., every 90 days, to verify the
information contained in the registration form he signed on November 24, 1997. On
each of these dates, appellant signed a new INT-10 form. Each of these forms
indicated that appellant was required to verify his registration information every 90
days. Each form also required appellant to indicate the relevant offenses of which he
was convicted. The pre-printed INT-10 form listed 12 different offenses. On each
of the three INT-10 forms signed by appellant, an “X” was placed in front of the
following two offenses: sexual assault and aggravated sexual assault, indicating that
appellant had been convicted of those offenses. On the June 5, 1998 form, behind the
phrase “sexual assault,” the hand-written notation “sodomy” was added.
          In June 1998, appellant moved to Waller County. He registered as a sex
offender with the Waller County Sheriff’s Department on June 11, 1998. At that
time, appellant again signed an INT-10 registration form. As with the three INT-10
forms previously signed by appellant in Houston, this form also indicated that
appellant was required to verify his registration information every 90 days. The form
also indicated that appellant had been convicted of sexual assault and aggravated
sexual assault. Like the June 5, 1998 form signed by appellant, the handwritten
notation “sodomy” was added behind the phrase “sexual assault.” 
          Although he did not move from Waller County, appellant failed to register or
otherwise verify his registration information with the Waller County Sheriff’s
Department again until July 28, 1999, 13 months after his June 11, 1998 registration. 
At that time, appellant signed another INT-10 registration form. That form contained
information identical to that found in the form he signed on June 11, 1998. 
          Because appellant failed to register or otherwise verify his information within
90 days of his June 11, 1998 registration, the State charged appellant by indictment
with failure to comply with the statutory-sex-offender-registration requirements. 
          The State’s indictment read, in relevant part, as follows:
[Appellant] on or about the 11th day of September, 1998 . . ., did then
and there, after being duly convicted of two sexually violent offenses,
to wit: Felony Sodomy and Aggravated Sexual Abuse, . . . intentionally
and knowingly failed [sic] to register as a sex offender as required by
law and failed to verify his registration as a sex offender as required by
law.



          At trial, Johnny Jezierski, a sergeant investigator for the Texas Department of
Public Safety, special crimes division, testified for the State. Sergeant Jezierski stated
that he conducted an investigation to determine whether appellant had complied with
the sex-offender-registration requirements. 
          Sergeant Jezierski explained that sex offenders twice convicted of “sexually
violent offenses” were required to “register” every 90 days.


 With regard to
appellant’s offenses, Sergeant Jezierski testified as follows:
Q:Sergeant Jezierski, would felony sodomy qualify as a sexually
violent offense?
 
A:Yes.
 
Q:How about aggravated sexual abuse?
 
A:Yes.
 
Q:These weren’t . . . names that you specifically read out as
enumerated by statute. Are they precursors of the enumerated
offenses?
 
A:Yes. Those offenses, if they occurred prior to the Penal Code,
they might have been named differently.
 
Q:But they are, in fact, the same offenses and considered by law to
be sexually violent offenses?
 
A:Yes.

          Sergeant Jezierski stated that appellant had a lifetime requirement to register
as a sex offender with a 90-day requirement to verify his registration information. 
The defense offered no objection to Sergeant Jezierski’s characterization of
appellant’s offenses as “sexually violent offenses” or of appellant’s registration
requirements; defense counsel also did not cross-examine Sergeant Jezierski on these
points. Sergeant Jezierski stated that his investigation revealed appellant had failed
to register every 90 days as required.
          The State next called Robert Rosales to testify. Rosales was appellant’s parole
officer while appellant lived in Houston. Like Sergeant Jezierski, Rosales’s
uncontested testimony was that appellant was required to register as a sex offender
every 90 days. Rosales stated that, as the end of each 90-day period drew near, he
counseled appellant about his duty to “register.” Rosales also testified that, before
appellant moved to Waller County, he advised appellant of his duty to register in that
county and of appellant’s continued duty to “register” every 90 days.
          The State then called Houston Police Officer Dalia Hester. Officer Hester
testified that she worked in the sex offender registration unit of the Houston Police
Department. She stated that appellant came to her office to register as a sex offender
on three occasions: November 4, 1997, March 6, 1998, and June 5, 1998. 
          Officer Hester testified that, on appellant’s initial visit, she was aware of only
appellant’s 1988 conviction for aggravated sexual abuse. However, after checking
“the computer” to verify appellant’s information, Officer Hester stated that she
discovered appellant’s 1971 arrest for “sexual assault sodomy.” Based on her
discovery that appellant had been arrested for “sexual assault sodomy,” Officer Hester
informed appellant that he needed to return to her office in 90 days to verify his
registration information. According to Officer Hester, she conducted additional
research that indicated appellant was convicted of the 1971 offense, which she
characterized as “sexual assault sodomy.” 
          Officer Hester testified that, at each of his three visits with her, appellant
signed an INT-10 registration form. Officer Hester stated that each of these three
forms indicated that appellant was required to report every 90 days. 
          The State introduced the three INT-10 registration forms into evidence through
Officer Hester. Officer Hester pointed out that in section 34 of the INT-10 form was
an instruction that warned the signing-sex offender to “throughly review the
information” in the form and that providing false information was a criminal offense.
Officer Hester testified that she reviewed the warning in section 34 with appellant
before he signed the form on at least one occasion.
          The State’s next witness was Eric Ceppi, appellant’s parole officer after
appellant moved to Waller County. Ceppi testified that, during one of his initial visits
with appellant, he went over the INT-10 registration form “line by line” with
appellant, including appellant’s 90-day registration requirement. 
          When asked what offenses appellant committed that required him to register
as a sex offender, Ceppi responded as follows: “He had an aggravated sexual abuse
and a sexual assault sodomy charge.” The defense did not object to this response or
otherwise cross-examine Ceppi regarding his knowledge of appellant’s offenses.
          The State’s last witness was Elizabeth Cooke, an employee with the Waller
County Sheriff’s Department. Cooke testified that one of her duties was to register
sex offenders. Cooke stated that appellant registered as a sex offender twice in
Waller County—on June 11, 1998 and July 28, 1999. On each of these dates,
appellant signed an INT-10 form. Through Cooke, the State admitted the two forms. 
Cooke testified that it was her normal procedure to instruct the registering sex
offender to look over the INT-10 registration form “to be sure everything is correct
and sign it.” 
          Appellant was the only witness to testify for the defense. Appellant admitted
that Officer Hester and his parole officer, Robert Rosales, informed him of the 90-day
registration requirement. However, appellant stated that he was never told that he had
to register every 90 days for the remainder of his life. To the contrary, appellant
testified that when he registered at the Waller County Sheriff’s Department in June
1998, he was told that he had to register annually.
          On cross-examination, appellant admitted to being convicted of sodomy in
1972 and aggravated sexual abuse in 1988. After appellant testified, the defense
rested. 
          In closing argument, the only defensive theory presented by appellant’s trial
counsel was that appellant did not intentionally and knowingly fail to satisfy the sex-offender-registration requirements. Defense counsel argued that appellant did not
know that he had a continued duty to register every 90 days after he moved to Waller
County.
          Subsequently, a discussion regarding the jury charge was held off the record. 
Following that discussion, the trial court asked, “Is there any objection to the charge
from the State or from the Defendant?” Defense counsel responded, “None from the
Defense, Your Honor.”
          The trial court charged the jury, in relevant part, as follows:
Our law provides that a person commits an offense if, after being
convicted of two or more sexually violent offense [sic], he intentionally
or knowingly fails to register as a sex offender as required by law or
fails to verify his registration as required by law. Felony sodomy and
aggravated sexual abuse are sexually violent offenses.

. . . .
 
Now if you find from the evidence beyond a reasonable doubt that on or
about the 11th day of September, 1998 in Waller County, Texas,
[appellant] did then and there, after being convicted of two or more
sexually violent offenses, to wit: felony sodomy and aggravated
sexual abuse, intentionally and knowingly failed [sic] to register as a
sex offender as required by law or failed to verify his registration as a
sex offender as required by law, then you will find the defendant guilty
of failure to comply with sex offender registration.

(Emphasis added.)
          The jury returned a verdict finding appellant guilty as charged in the
indictment. This appeal followed.
DISCUSSION
A.      Charge Error
          In point of error one, appellant contends that the trial court erred by instructing
the jury that “felony sodomy” is a sexually violent offense. As mentioned above, not 
only did appellant’s trial counsel fail to object to this instruction, defense counsel
affirmatively stated that he had no objection to the charge when asked by the trial
court. 
          We begin by recognizing that this Court has consistently held that an
affirmative statement of “no objection” to a charge, as here, waives error because it
leads the trial court to believe it is giving a charge to which the defendant has no
objection. See White v State, 59 S.W.3d 368, 371 (Tex. App.—Houston [1st Dist.]
2001, pet. ref’d); Stallings v. State, 48 S.W.3d 170, 176 (Tex. App.—Houston [1st
Dist.] 2001, no pet.); Ly v. State, 943 S.W.2d 218, 220-21 (Tex. App.—Houston [1st
Dist.] 1997, pet ref’d); Reyes v. State, 934 S.W.2d 819, 820 (Tex. App.—Houston [1st
Dist.] 1996, pet. ref’d); see also McCain v. State, 995 S.W.2d 229, 243 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d, untimely filed); McCray v. State, 861
S.W.2d 405, 409 (Tex. App.—Dallas 1993, no pet.) (same); contra Webber v. State,
29 S.W.3d 226, 232-35 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (holding
that error in jury charge cannot be waived by affirmative approval of charge; see also
Ponce v. State, 89 S.W.3d 110, 117 (Tex. App.—Corpus Christi 2002, no pet.); Ward
v. State, 72 S.W.3d 413, 417 (Tex. App.—Fort Worth 2002, no pet.); Bluitt v. State,
70 S.W.3d 901, 905-06 (Tex. App.—Fort Worth 2002, pet. granted). Nevertheless,
even assuming the defense’s affirmative “no objection” statement did not waive error,
we conclude that, based on the record before us, the jury charge in this case was not
erroneous.
          On appeal, appellant does not dispute that he was convicted of “felony
sodomy” in 1972. Rather, appellant complains that the trial court’s instruction is an
incorrect statement of the law because “felony sodomy” is not specifically listed as
a “sexually violent offense” in subarticle 62.01(6) of the Code of Criminal Procedure. 
See Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994) (stating charge
must contain accurate statement of law because it is so essential to jury’s
deliberations). 
          At the time appellant failed to register in September 1998, subarticle 62.01(6)
defined “sexually violent offense” as follows:
“Sexually violent offense” means any of the following offenses
committed by a person 17 years or older:
 
                    (A) an offense under Section 21.11(a)(1) (Indecency with
a child), 22.011 (Sexual assault), or 22.021 (Aggravated
sexual assault), Penal Code;
 
                    (B) an offense under Section 43.25 (Sexual performance by
a child), Penal Code;
 
                    (C) an offense under Section 20.04(a)(4) (Aggravated
kidnaping), Penal Code, if the defendant committed the
offense with intent to violate or abuse the victim sexually;
 
                    (D) an offense under Section 30.02 (Burglary), Penal Code,
if the offense is punishable under Subsection (d) of that
section and the defendant committed the offense with
intent to commit a felony listed in Paragraph (A) or (C) of
Subdivision (5); or
 
                    (E) an offense under the laws of another state if the offense
contains elements that are substantially similar to the
elements of an offense listed under Paragraph (A), (B), (C),
or (D).




The State responds that the trial court did not err in charging the jury that “felony
sodomy” is a “sexually violent offense” because the now-repealed sodomy statute,
under which appellant was convicted, is a statutory predecessor to certain sections of
the Penal Code, namely, sexual assault and aggravated sexual assault, which are
enumerated as “sexually violent offenses” in subarticle 62.01(6). See Tex. Code
Crim. Proc. Ann. art. 62.01(6)(A) (Vernon Supp. 2003). 
          Resolution of this issue requires a two-part analysis. First, we must determine
whether the Legislature intended the predecessor statutes of those offenses listed in
subarticle 62.01(6) to be considered “sexually violent offenses.” If so, we must then
determine whether the now-repealed Penal Code section defining sodomy is a
statutory predecessor to an offense listed in subarticle 62.01(6). Because making
these determinations requires us to construe subarticle 62.01(6), we employ the
accepted rules of statutory construction. 
          When we interpret statutes, we try to effectuate the collective intent or purpose
of the legislators who enacted the legislation. Boykin v. State, 818 S.W.2d 782, 785
(Tex. Crim. App. 1991). We interpret a statute in accordance with the plain meaning
of its words unless the words are ambiguous or the plain meaning leads to absurd an
result. Mosley v. State, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998); Boykin, 818
S.W.2d at 785. If a statute may reasonably be interpreted in two different ways, a
court may consider the consequences of differing interpretations in deciding which
interpretation to adopt. Muniz v. State, 851 S.W.2d 238, 244 (Tex. Crim. App. 1993). 
Moreover, if one reasonable interpretation of a statute yields absurd results and
another interpretation yields no such absurdities, the latter interpretation should be
preferred. Id. 
          With regard to the underlying legislative intent of the sex-offender registration
act, the Fort Worth Court of Appeals observed as follows:
[I]n enacting the current registration and notification plan, the
legislature considered the unique threat sex offenders present to public
safety, the high rate of recidivism among sex offenders, the low
incidence of rehabilitation among sex offenders, and that sexual
misconduct often begins as a juvenile. . . . [T]he legislature’s goal in
passing the registration and notification provisions was to advance
public safety objectives by facilitating law enforcement’s monitoring of
sex offenders and by alerting members of the public who may be in an
especially vulnerable situation to take appropriate precautions which
could deter or prevent further crimes. 
In re M.A.H., 20 S.W.3d 860, 863 (Tex. App.—Fort Worth 2000, no pet.). In keeping
with these legislative objectives, the 1997 amendments to the sex-offender
registration act expanded the class of persons required to register as sex offenders and
increased the frequency and duration of registration for those sex offenders who have
been convicted of “sexually violent offenses.”


 The Court of Criminal Appeals
recently recognized that the 1997 amendments serve the remedial and non-punitive
legislative purpose of protecting the public’s safety. Rodriguez v. State, 93 S.W.3d
60, 75-78 (Tex. Crim. App. 2002). 
          Interpreting subarticle 62.01(6) under its plain language results in the exclusion
of those offenses defined in the statutory predecessors to those offenses listed in that
subarticle. We believe such a reading leads to an absurd result that is contrary to the
legislative intent of the statute. This “absurdity” is demonstrated by analyzing the
consequences of such an interpretation. 
          In 1983, the Legislature repealed the statutes defining the offenses of rape,
aggravated rape, rape of a child, sexual abuse, and aggravated sexual abuse.


 At that
same time, the Legislature created the present-day offenses of sexual assault and
aggravated sexual assault.


 Undeniably, the repealed-Penal Code provisions defining
rape, aggravated rape, rape of a child, sexual abuse, and aggravated sexual abuse are
the statutory predecessors of the present-day offenses of sexual assault and
aggravated sexual assault. Though subarticle 62.01(6) specifically includes both
sexual assault and aggravated sexual assault in its definition of a “sexually violent
offense,” it does not list the repealed Penal Code sections defining rape, aggravated
rape, rape of a child, sexual abuse, or aggravated sexual abuse. Because these offense
are not listed, giving effect to the plain language of subarticle 62.01(6) would lead to
the absurd consequence of excluding these former offenses from being “sexually
violent offenses.” 
          Given the obvious purpose of the sex-offender registration act generally, and
the 1997 amendments specifically, the Legislature could not have intended such an
interpretation. We interpret subarticle 62.01(6) to include the statutory predecessors
to those offenses listed in that subarticle. Such a reading effectuates the legislative
objectives of the sex-offender registration act to safeguard the public’s safety. 
          Article 62.11 provides further support for our conclusion that predecessor
statutes should be included as “sexually violent offenses.” That article provides that
Chapter 62, which contains the sex-offender-registration provisions, applies to “a
reportable conviction or adjudication occurring on or after September 1, 1970.” Id.
art. 62.11 (Vernon Supp. 2003). The offenses listed in article 62.01 as either “a
reportable conviction or adjudication” or a “sexually violent offense” did not exist in
their current statutory form in 1970. Since then, the statutes covering sexual assault
offenses have been amended, repealed, and amended again on numerous occasions. 
See 6 Michael B. Charlton, Texas Practice: Texas Criminal Law § 13.8, at 204-07 (2001) (detailing history of sexual assault and aggravated sexual assault statutes 
and describing them as “among the most complex statutes in the present Penal Code
simply because they have been amended so often”). As previously mentioned, the
offenses of aggravated sexual assault and sexual assault did not exist in their current
statutory form until 1983. Because the temporal application of Chapter 62 predates
the current statutory versions of the offenses enumerated in subarticle 62.01(6), by
implication, the Legislature intended to include predecessor statutes in the definition
of “sexually violent offenses.”
          We also note that, at the time appellant committed the offense at issue in this
case, subarticle 62.01(6) defined “sexually violent offense” to include “an offense
under the laws of another state if the offense contains elements that are substantially
similar to the elements of an offense listed under Paragraph (A), (B), (C), or (D).”


 
This provision indicates the Legislature’s willingness to extend subarticle 62.01(6)’s
definition of “sexually violent offense” to qualifying offenses even though the offense
is not specifically listed in that subarticle. The provision also demonstrates that it is
the substance, not the statutory form, of the offense that is relevant to determining
whether it is a “sexually violent offense.”
          We conclude that an offense defined in a predecessor statute of those offenses
listed in subarticle 62.01(6) is also a “sexually violent offense” for purposes of the
sex offender registration act.
          Next, we must determine whether the now-repealed statutory provision
defining the offense of sodomy is a predecessor statute to an offense listed in
subarticle 62.01(6). 
          The offense of sodomy was found in repealed Penal Code article 524, which
provided as follows:
Whoever has carnal copulation with a beast, or in an opening of the
body, except sexual parts, with another human being, or whoever shall
use his mouth on the sexual parts of another human being for the
purpose of having carnal copulation, or who shall voluntarily permit the
use of his own sexual parts in a lewd or lascivious manner by any minor,
shall be guilty of sodomy, and upon conviction thereof shall be deemed
guilty of a felony, and shall be confined in the penitentiary not less than
two (2) nor more than fifteen (15) years.


 
          Stated in somewhat arcane terminology, article 524 criminalized a wide range
of sexual conduct. While part of the sexual conduct described in article 524 was
decriminalized after the article’s repeal in 1973, other conduct listed in article 524
remained criminalized. For example, current Penal Code sections 22.011, sexual
assault, and 22.021, aggravated sexual assault, like article 524, generally criminalize
engaging in sexual acts with children. Tex. Penal Code Ann. §§ 22.011, 22.021
(Vernon Supp. 2003). With a few exceptions, the offense of “sexual assault” found
in Penal Code section 22.011 criminalizes engaging in sexual acts with persons
younger than 17 years of age. Id. § 22.011. Penal Code section 22.021 defines
“aggravated sexual assault” to include engaging in specified sexual acts with a person
under 14 years of age. Id. § 22.021. The conduct criminalized by article 524
pertaining to children, i.e., to “voluntarily permit the use of his own sexual parts in
a lewd or lascivious manner by any minor,” is now subsumed by conduct criminalized
in the current sexual assault and aggravated sexual assault statutes. 
          A historical review of Texas case law indicates that sexual assault offenses
committed against children were prosecuted under the “lewd and lascivious”
language of article 524. See, e.g., Sartin v. State, 335 S.W.2d 762, 763 (Tex. Crim.
App. 1960) (affirming sodomy conviction when evidence showed appellant had
performed oral sex on 14-year-old boy); Slusser v. State, 232 S.W.2d 727, 729 (Tex.
Crim. App. 1949) (involving prosecution of defendant for performing “repulsive
perverted acts” toward 10-year-old-boy). Additional cases indicate that sexual
assaults involving children and other sexually assaultive acts were prosecuted under
other provisions of article 524. See, e.g., McDonald v. State, 513 S.W.2d 44, 46-48
(Tex. Crim. App. 1974) (involving sodomy conviction of defendant who performed
oral sex on eight or nine-year-old boy and was prosecuted under article 524 provision
prohibiting using one’s “mouth on the sexual parts of another human being for the
purpose of having carnal copulation”); Pruett v. State, 463 S.W.2d 191, 192 (Tex.
Crim. App. 1970) (involving forcible, non-consensual anal penetration of one boy by
another who was prosecuted under article 524 language prohibiting “carnal
copulation . . . in an opening of the body, except sexual parts, with another human
being”). The type of sexually assaultive conduct described in these cases would
today be prosecuted under either the sexual assault or aggravated sexual assault
statutes. 
          We conclude that article 524 is a statutory predecessor to the present-day
offenses of sexual assault and aggravated sexual assault. Appellant contends that the
trial court’s instruction that “felony sodomy” is a “sexually violent offense” was an
incorrect statement of the law for the sole reason that subarticle 62.01(6) does not list
it as a “sexually violent offense.” However, as a statutory predecessor to the present-day offenses of sexual assault and aggravated sexual assault, article 524 defining
“felony sodomy,” by necessary implication, is included as a “sexually violent
offense” under subarticle 62.01(6). 
          We recognize, as stated above, that some of the deviate sexual conduct that was
specified in the sodomy statute is no longer criminalized under Texas law. In
addition, we recognize that the sodomy statute is also a predecessor statute to Penal
Code section 21.06, which criminalizes homosexual conduct. Tex. Penal Code
Ann. § 21.06 (Vernon 1994). Section 21.06 is not listed as a “sexually violent
offense” under subarticle 62.01(6). To the extent that a person was convicted under
the sodomy statute for conduct that is now decriminalized or that constitutes conduct
currently criminalized under Penal Code section 21.06, sodomy may not be a
“sexually violent offense” as defined in subarticle 62.01(6). In this case, the record
does not reveal the specific underlying conduct that led to appellant’s 1972 sodomy
conviction. However, the State did present evidence indicating that appellant’s
sodomy conviction was for “sexual assault sodomy.” Thus, based on the record
presented, and, the fact that the sodomy statute is a statutory precursor to offenses
specifically enumerated in subarticle 62.01(6) as “sexually violent offenses,” we
conclude the trial court’s instruction that felony sodomy is a “sexually violent
offense” was not an incorrect statement of the law in this case. As such, we hold the
charge was not erroneous.
          We overrule point of error one.
B.      Sufficiency of the Evidence
          In his second point of error, appellant claims the trial court erred in denying
appellant’s motion for directed verdict because the evidence presented in the State’s
case-in-chief was factually insufficient to show that appellant had been convicted of 
two or more sexually violent offenses. 
          At the close of the State’s evidence, the defense moved for a directed verdict
on the ground that the State had failed to prove that appellant had been convicted of
two sexually violent offenses. The defense argued that the only evidence introduced
by the State to establish that appellant had been convicted of felony sodomy and
aggravated sexual abuse were “hearsay statements.” The defense further argued that
the State had failed to introduce any record of appellant’s convictions, such as the
judgments. In other words, the emphasis of defense’s argument was that the State had
failed to prove appellant had been convicted of two sexually violent offenses, not that
the State had failed to show that the offenses were sexually violent offenses. 
          Responding to the defense’s argument, the prosecutor stated, 
 
With respect to the conviction of two or more [sexually] violent
offenses, as [defense counsel] did state, it was hearsay. However,
unobjected to hearsay is admissible as evidence and so we would
respond that, in fact, we have proven that he was convicted of felony
sodomy and aggravated sexual abuse.

The defense offered no rebuttal argument. The trial court ruled that the State had
proven its prima facia case and denied the defense’s motion for directed verdict.
          Although appellant phrases his challenge to the trial court’s ruling on his
motion for directed verdict as one of factual sufficiency, the law is well-settled that
a challenge on appeal to the denial of a motion for directed verdict is a challenge to
the legal sufficiency, not the factual sufficiency of the evidence. Noyola v. State, 25
S.W.3d 18, 19 (Tex. App.—El Paso 1999, no pet.); see also Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996) (“We treat a point of error complaining
about a trial court's failure to grant a motion for directed verdict as a challenge to the
legal sufficiency of the evidence.”). A legal sufficiency challenge requires us to
determine whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim.
App. 2000).
          Appellant limits his evidentiary challenge to the State’s purported failure to
offer sufficient evidence to prove that felony sodomy is a sexually violent offense. 
Appellant argues that it was not possible for the State to meet this burden “because
by law ‘felony sodomy’ is not a ‘sexually violent offense’. . . .” In this respect,
appellant is reasserting the argument he made in point of error one, i.e., that sodomy
is not a “sexually violent offense” because the now-repealed article 524 containing
that offense is not listed in Code of Criminal Procedure subarticle 62.01(6) as a
“sexually violent offense.” As discussed under point of error one, we do not agree
with appellant’s facile reading of subarticle 62.01(6). 
          We next turn to the evidence relevant to appellant’s second point of error. 
Appellant argues that Sergeant Jezierski’s “unsupported testimony” that felony
sodomy is a sexually violent offense “is not enough to make it so.” However,
appellant’s trial counsel failed to object to Sergeant Jezierski’s testimony on this
point. 
          Sergeant Jezierski’s testimony on this point was given in the context of his
other testimony, as follows: (1) one of Sergeant Jezierski’s tasks, as an investigator
with the Department of Public Safety, was sex-offender registration; (2) Sergeant
Jezierski had taken a 40-hour training course covering the sex offender registration
program; (3) Sergeant Jezierski investigated appellant to determine whether appellant
had not complied with the applicable sex-offender registration requirements; (4) from
his investigation, Sergeant Jezierski determined that appellant was subject to a 90-day
requirement to verify his registration information and had failed to verify his
registration information after appellant moved to Waller County. Sergeant Jezierski’s
testimony demonstrated that he had specialized knowledge of the requirements of the
sex-offender-registration statutes and had personal knowledge of the specific details
of appellant’s registration requirements. 
          The State also offered evidence tending to show that appellant’s sodomy
conviction was for some form of sexual assault. As discussed in the preceding
section, sexual assault is an offense specifically listed in subarticle 62.01(6) as a
“sexually violent offense.” Tex. Code Crim. Proc. Ann. art. 62.01(6)(A).
          The five INT-10 sex-offender-registration forms signed by appellant, which the
State introduced into evidence, indicated that appellant had been convicted of 
“aggravated sexual assault” in 1988 and “sexual assault” or “sexual assault-sodomy”
in 1972. Each form also indicated that appellant was required to verify his
registration information every 90 days. Appellant signed each form thereby
indicating that the information contained in the form was correct, subject to penalty
of law. The evidence also showed that appellant complied with the 90-day
registration requirement without question while he resided in Houston. Appellant
offered no evidence, and there is none in the record, tending to discredit or controvert
the State’s evidence on this point. 
          Viewing the evidence in the light most favorable to the prosecution, we hold
the evidence is sufficient to support the verdict.
          We overrule point of error two.
 

CONCLUSION
          We affirm the judgment of the trial court.



 
                                                             Laura C. Higley 
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Higley.
Publish. Tex. R. App. P. 47.2(b).